UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LAURIE GIBBS,

                Plaintiffs,                      Case No. 18-13602

v.                                                Honorable Thomas L. Ludington

MICHIGAN BELL COMPANY
d/b/a AT&T,

                Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING CASE**

On November 19, 2018, Plaintiff, Laurie Gibbs, filed a complaint against Defendant, Michigan Bell Company (doing business as AT&T), alleging violations of FMLA and Michigan Persons with Disabilities Act. ECF No. 1. On November 12, 2019, Defendant filed a motion for summary judgment. ECF No. 17. The response and reply were timely filed. ECF Nos. 19, 20, 21.

**I.**

Plaintiff was hired as a service representative ("SRS") at a Michigan Bell Saginaw call center on November 6, 2000. ECF No. 17-2 at PageID.116. She was a member of the Communications Workers of America Union. ECF No. 17-2 at PageID.123. When she began her employment, the call center received phone calls from any customer having difficulties with their AT&T service. *Id.* at PageID.117. At some point during her tenure, the call center was re-designated as a retention center. *Id.* The goal of the center was to retain customers, thereby avoiding service disconnections. *Id.*

**A.**

The SRSs report to first level coaches who report to the center sales manager. *Id.* Around 2008–2009, Michigan Bell started rating SRS' performances using a monthly scorecard. *Id.* at PageID.120. An SRS had to achieve a score of 100 percent on their scorecard to meet their monthly objectives. *Id.* SRSs who met their objectives were eligible to become service leaders. ECF No. 17-2 at PageID.122. When an SRS is service leading they are "walking around or receiving questions from other representatives. Basically [acting as] a floor manager, so you're alleviating what the coaches should be doing." *Id.*

Michigan Bell uses a progressive discipline system: a first written warning, followed by a final written warning letter which includes a one-day suspension, and finally a suspension pending termination. ECF No. 17-21 at PageID.235; ECF No. 17-2 at Page ID.146. The center sales manager, as well as the coach, would make disciplinary decisions. ECF No. 17-21 at PageID.234. The center sales manager makes the final decision on termination. ECF No. 17-21 at PageID.236; ECF No. 17-23 at PageID.263.

**B.**

Plaintiff began using significant FMLA time off in 2010. In 2010 Plaintiff took 303.7 hours of FMLA leave due to problems with her right foot. ECF No. 17-2 at PageID.125. In 2011 she took 267 hours of FMLA leave for problems with her left foot. ECF No. 17-2 at PageID.126. In 2012 she took 409.25 hours of FMLA leave for right foot surgery. *Id.* at PageID.126. She also took intermittent FMLA leave to care for her husband who was diagnosed with chronic lymphoma leukemia. *Id.* at PageID.127-128. In 2013, she took 277 hours of FMLA leave, most likely for foot pain/problems. *Id.* She was also authorized to take up to 80 hours of intermittent FMLA leave per

month.[1] *Id.* In 2014 she took 72.25 hours of FMLA leave and was authorized to take 80 hours of intermittent FMLA leave per month for foot and back pain. *Id.* at PageID.129. In 2015 she took 72 hours of FMLA leave and was authorized to take up to 80 hours of intermittent FMLA leave per month for foot and back pain. *Id.* In 2016, she used 70.5 hours of FMLA leave and had 80 hours of intermittent FMLA leave per month for foot and back pain. *Id.*

Plaintiff testified that she was told by Jennifer McComb, her coach, that her scorecard objectives would not be reduced for the months that she utilized FMLA leave. ECF No. 121. She also testified that she checked her scorecards at the end of the month and they were not adjusted for her FMLA leave. *Id.* at PageID.121-122. However, she never raised the issue with anyone other than her coach. *Id.* Plaintiff was aware that she could file a grievance if she felt that she had been discriminated against, but she did not file a grievance. ECF No. 17-2 at PageID.125. Plaintiff also testified that she does not know if the managers would be able to change the scorecard objectives. ECF No.17-2 at PageID.121. Plaintiff further testified that she received daily emails mentioning the individuals who were absent from the office, but she did not know if individuals who were on FMLA leave were included in the list. ECF No. 20-2 at PageID.415-416.

Neither the coaches nor the center sales manager are able to amend the scorecard objectives. ECF No. 17-21 at PageID.233-234; ECF No. 17-23 at PageID.254-255. A document from Michigan Bell titled "MyScorecard FAQs" states that union, military duty, jury duty, FMLA, and vacation time result in approved adjustments to employees' scorecard objectives. ECF No. 17-22 at PageID.240. The FAQs specify that full relief is given for union, military duty, jury duty, and FMLA leave. *Id.* An asterisk is included next to the objectives header on an employee's scorecard if an employee's objectives were adjusted for the month. *Id.*; ECF No. 17-23 at

---

[1] It is unclear from the record how many hours of intermittent FMLA leave Plaintiff used, if any.

PageID.255. An asterisk was included in all of Plaintiff's monthly scorecards from January 2015 to October 2016. ECF No. 17-3.

Adjustments to scorecards were handled outside the Saginaw office where Plaintiff worked. ECF No. 17-21 at PageID.233. A Senior Quality/M&P/Process Manager averred in an affidavit that coaches and Center Sales Managers do not have the ability to change the scorecard objectives. ECF No. 17-26 at PageID.285. If an SRS takes FMLA leave,

> the attendance manager [an individual who is not the coach or center sales manager] inputted a code reflecting the SRS's FMLA leave into the Company's time reporting system, referred to as NICE. . . . Once the attendance manager inputs the requisite code into the Company's time reporting system, the SRS's scorecard objectives are automatically adjusted to account for the SRS's FMLA leave, thereby eliminating the need for human intervention and the risk of human error. ECF No. 17-26 at PageID.286.

**C.**

Starting around 2008 or 2009, all service representatives were measured by their ability to meet metrics on a scorecard. ECF No. 17-2 at PageID.120. Plaintiff explained that she was a service lead for a few months in 2015 – which she testified required her to have no negative marks and be on target for her objectives. *Id.* at PageID.122. However, her scorecard percentages steadily decreased near the end of 2015 and into 2016. ECF No. 17-2 at PageID.135-137. She testified she would not have been eligible to service lead in 2016 due to her poor performance. *Id.* at PageID.123. Plaintiff's scorecard percentages are listed below. ECF No. 17-2 at PageID.135-136; ECF No. 17-3.

| Month | Percentage |
|---|---:|
| Jan. 2015 | 120.867 |
| Feb. 2015 | 96.976 |
| Mar. 2015 | 101.694 |
| April – July, Service leading - no scorecards | |
| Aug. 2015 | 96.872 |
| Sept. 2015 | 103.362 |
| Oct. 2015 | 87.053 |

| Nov. 2015 | 85.019 |
| --- | --- |
| Dec. 2015 | 84.335 |
| Jan. 2016 | 103.279 |
| Feb. 2016 | 105.565 |
| Mar. 2016 | 85.215 |
| Apr. 2016 | 76.708 |
| May 2016 | 84.840 |
| June 2016 | 98.719 |
| July 2016 | 82.991 |
| Aug. 2016 | 89.971 |
| Sept. 2015 | 89.196 |
| Oct. 2016 | 76.642 |

Plaintiff received her first disciplinary written warning on May 22, 2012 when her coach was Jennifer Taylor. ECF No. 17-2 at PageID.141. On June 6, 2013 Plaintiff received a code of business conduct violation and was given a three-day suspension. ECF No. 17-2 at PageID.141. Her memory of the incident is that she swore on the phone after a call disconnected. *Id.* However, she testified that a customer was not on the line at the time. *Id.* Her memory is that the union grieved the discipline and it was at least partially overturned and she received some, if not all, back pay. *Id.* On August 6, 2013, Plaintiff's new coach Emily Stark wrote her up for her poor scorecard results. *Id.* On May 22, 2014, Plaintiff received another first written warning for her monthly scorecard report. *Id.* at PageID.142. On March 26, 2015 Plaintiff received another first written warning for her monthly scorecard. *Id.* On September 24, 2015 Plaintiff received yet another first written warning regarding her monthly scorecard results. *Id.* Plaintiff explained this happened after she finished doing service leading so she was working to get her numbers back up. *Id.* In February 2016 Plaintiff's coach, Fernanda Rivera, issued her a "formal coaching notice" due to her lack of satisfactory results. ECF No. 17 at PageID.83; ECF No. 17-11. Ms. Rivera explained that she "[h]ad a frank conversation with Laurie, that she is not satisfactory and that although I am not doing any corrective action at this time, she has to improve her results." ECF No. 17-11 at PageID.207.

By March 2016 Jennifer McComb's name appeared as Plaintiff's coach on her scorecard. ECF No. 17-2 at PageID.255. On April 6, 2016, Plaintiff also received a code of business conduct violation for keeping a customer on hold for eight minutes. *Id.* at PageID.150-151. She received a multi-day suspension that was later reduced to a one-day suspension. *Id.*; ECF No. 17-18 at PageID.221. On May 20, 2016 Plaintiff received a first written warning for scorecard performance from Jennifer McComb. *Id.* at PageID.144. Plaintiff received a second first written warning for scorecard performance on June 22, 2016. *Id.* at PageID.145. She received a third first written warning for scorecard performance on August 9, 2016. *Id.* Plaintiff does not remember any of these specific forms of discipline and explains that she had frequent conversations with Ms. McComb about her work performance, as well as personal conversations about Ms. McComb's family. ECF No. 17-2 at PageID.145. On August 24, 2016 she received her first final written warning. ECF No. 17-2 at PageID.146. She received a second final written warning on October 13, 2016. *Id.*

Then on December 9, 2016 she received a suspension pending dismissal. *Id.* She had a review board hearing on December 20, 2016. *Id.* at PageID.147. Plaintiff testified that she didn't understand much of what happened during the meeting. *Id.* She testified that someone went over her scorecard performance and she

> tried to explain that I had strep. I couldn't tell him that Jennifer McComb was harassing me almost on a daily basis. And I blamed it on my husband and my mother alone out of state. That was not the case. What was the case was that I was going in there just how I feel right now, all rigid, shaking my stomach rolling on a daily basis for eight months. Every single call, whether she was working or not, was being listen [sic] to and then brought to my attention, stuff that isn't even on these papers, so I could not tell him what the issue was. I was telling them what they wanted to hear so that I could keep my job. I had two years to go [to retire] and I would have said bye and left.
> *Id.* at PageID.147.

Plaintiff was terminated on December 22, 2016 for poor scorecard metrics. ECF No. 17-2 at PageID.117, 234. She believed that she understood how to perform her job and excelled at some parts because she was able to take care of the needs of most customers that called. *Id.* at PageID.119.

**D.**

Plaintiff admits she was never denied FMLA leave. ECF No. 17-2 at PageID.130. She testified she was never disciplined for taking FMLA. ECF No. 17-2 at PageID.131. She testified that her foot pain would be intermittent for up to a "few hours." She would have some ability to move, but the amount depended on the pain level. ECF No. 17-2 at PageID.127-128. However, her lower back pain was more severe and could last all day. *Id.* at PageID.130, 133. Despite her pain and use of FMLA over the years, she testified that she is not disabled. ECF No. 17-2 at PageID.131-2. She also testified that she never took more than one day off at a time for her foot and back pain. ECF No. 17-2 at PageID.128, 130.

**II.**

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

### III.

Plaintiff claims that Defendant violated the Family and Medical Leave Act ("FMLA"). The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter," or to retaliate or discriminate against an employee exercising FMLA rights. 29 U.S.C. § 2615(a)(1)-(2). The Sixth Circuit recognizes two distinct theories of recovery for FMLA wrongdoing. *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). The "entitlement" or "interference" theory, which arises from § 2615(a)(1), prohibits an employer from interfering with an employee's exercise of her FMLA rights or wrongfully denying those rights and requires the employer to restore the employee to the same or an equivalent position upon her return from FMLA leave. *Id.* The "retaliation" theory, which arises from § 2615(a)(2), prohibits an employer from taking any adverse action against an employee for exercising or attempting to exercise his rights under the Act. *Id.* "A plaintiff proceeding under a retaliation theory must show discriminatory or retaliatory intent, whereas a plaintiff alleging interference need not prove any unlawful intent on the part of his employer." *Tennial v. United States Parcel Serv., Inc.*, 840 F.3d 292, 308 (6th Cir. 2016).

It is not clear from the face of her Complaint whether Plaintiff alleges an interference and/or retaliation claim. However, Defendant defends against both claims and Plaintiff argues both in her response to Defendant's motion for summary judgment. ECF No. 20. Therefore, both claims will be analyzed.

### A.

> To establish a claim for interference under the FMLA, a plaintiff must demonstrate that (1) he is an eligible employee, (2) the defendant is an employer as defined

under the FMLA, (3) the employee was entitled to leave under the FMLA, (4) the employee gave the employer notice of his intention to take leave, and (5) the employer denied the employee FMLA benefits to which he was entitled.
*Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 308 (6th Cir. 2016).

"A benefit is denied if an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave." *Id.* (internal quotation and citation omitted).

Defendant explains that Plaintiff admits she was never denied FMLA leave and therefore it argues that she failed to make a prima facie case for interference. ECF No. 17 at PageID.89-90. Plaintiff counters and argues that "the fifth element may be rephrased as a requirement that the employer used the leave against the employee and in an unlawful manner, as provided in the statute or the regulations (e.g., 29 CFR 825.220(c), which prohibits employers from using the taking of FMLA leave as a negative factor in employment actions)." ECF No. 20 at PageID.343. In support of her argument, Plaintiff cites *Wysong v. Dow Chemical Company*, 503 F.3d 441 (6th Cir. 2007). In *Wysong* the Sixth Circuit explained that

> [i]f an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled. We, therefore, have no objection to rephrasing the fifth element of an interference claim as being that the employer has 'somehow used the leave against her and in an unlawful manner, as provided in either the statute *or* regulations.'
> *Wysong*, 503 F.3d at 447 (quoting *Bradley v. Mary Rutan Hospital Ass'n*, 322 F. Supp. 2d 926, 940 (S.D. Ohio).

Plaintiff alleges that FMLA was used as a negative factor in her employment because "management discouraged the use of FMLA." ECF No. 20 at PageID.343. However, she does not cite any evidence of management discouraging the use of FMLA besides her own deposition testimony. ECF No. 20 at PageID.343-344. In addition, her deposition testimony itself is inconclusive at best. She testified that "I had heard from management that people using the FMLA were hurting the numbers in our office where higher management would see the need not to have

Saginaw." ECF No. 20-2 at PageID.403. When asked who made the statement, she replied that she "didn't recall [the] manager. It was actually said by a couple of different managers that the head count was being looked at, how many people weren't coming to work, how many people were using the FMLA, that was always. And on a daily basis we got numbers sent to our computers on how many people didn't come to work that day." *Id.* She also couldn't recall when the statements were made. *Id.*

Her second example of management discouraging the use of FMLA leave is her claim that that Michigan Bell's "failure to fully adjust scorecard metrics or provide coverage on new procedures for period of time, as when McComb did not provide coaching to Gibbs, when an employee is on leave can constitute interference." ECF No. 20 at PageID.343. Plaintiff has provided no evidence besides her own testimony that she believes that her scorecard objectives were not adjusted for the months that she took FMLA leave. *Id.* at PageID.343-344. While all inferences must be drawn in favor of the non-movant in a motion for summary judgment (i.e., Plaintiff), Plaintiff cannot prevail on her claim when she fails to offer evidence besides her own testimony that her FMLA leave was used against her. Plaintiff was allowed to take FMLA leave from 2010 through 2016. She testified that she was not denied FMLA leave. ECF No. 17-2 at PageID.130. Plaintiff has failed to establish a prima facie case for interference. As such, Defendant has shown that there is no genuine issue of material fact regarding Plaintiff's interference claim. Accordingly, Defendant's motion for summary judgment as to Count I – interference will be granted.

**B.**

"Absent direct evidence of unlawful conduct, FMLA-retaliation claims are evaluated according to the tripartite burden-shifting framework announced in *McDonnell Douglas Corp. v.*

*Green.*" *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). First, the plaintiff must "present evidence from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Id.* To establish a prima facie case of FMLA retaliation, a plaintiff must show

> (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.
> *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012).

If a plaintiff demonstrates a prima facie case, then the burden shifts to the defendant "to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action. If the defendant succeeds, the burden shifts back to the plaintiff to show that the defendant's proffered reason is a pretext for unlawful discrimination." *Id.* To prove the proffered reason for termination was pretext, a plaintiff must show "the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

The Sixth Circuit has explained that "to establish a causal connection, a plaintiff must proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007).

Defendant argues Plaintiff's claim for FLMA interference fails because she cannot establish a causal connection between her use of FMLA and her termination. ECF No. 17 at PageID.91. It maintains that she failed to meet her scorecard metrics, admitted she struggled with some customers, and was never denied FMLA leave. *Id.* Plaintiff counters and contends that "the factor that links the two [the adverse employment action and the protected conduct] is the testimony of Gibbs regarding Jennifer McComb's statements about FMLA and her scorecard

performance, as well as her statement that people who use FMLA are hurting the company." ECF No. 20 at PageID.347.

Unfortunately for Plaintiff, the only related evidence she has of any causal connection between her use of FMLA leave and her termination is her own testimony. Her reliance on the alleged statements of McComb that her FMLA leave did not result in an adjusted scorecard objective are misplaced. ECF No. 17-2 at PageID.121. Ms. McComb did not have the authority or ability to amend Plaintiff's scorecard. ECF No. 17-23 at PageID.254-255. Plaintiff has provided no evidence that her scorecard objectives were not adjusted for her FMLA time. Meanwhile Defendant provided an affidavit, documentation from an FAQs sheet, and deposition testimony from employees explaining that coaches and center service managers did not have the ability to change the objectives on scorecards. ECF No. 17-21 at PageID.233-234; ECF No. 17-22; ECF No. 17-23 at PageID.254-255; ECF No. 17-26. While Plaintiff testified that Ms. McComb talked about her personal life during coaching sessions, Defendant also provided evidence of McComb's discussions with Plaintiff during the coaching sessions where she discussed strategies and methods to assist Plaintiff and help her improve. ECF Nos. 17-5; 17-6; 17-7; 17-11; 17-19; 17-20. The only other evidence Plaintiff has is a 2009 email attached to her response from an Elizabeth Gunn berating "GM's" for poorly managing their attendance sheets for employees. ECF No. 20-3. The email includes a line explaining that "I want an explanation for each of the problem children. Is it a legitimate issue (cancer, etc.). If not, what are you going to do to move this person OUT OF THE BUSINESS before FMLA starts back over on January 1?". *Id.* (emphasis in original). This email, though, is from 2009 (before Plaintiff began taking FMLA leave) and Plaintiff does not provide any evidence connecting the author, the recipients, or the contents of the email to her FMLA situation or her termination in 2016.

Even if Plaintiff had shown there was a causal connection between her use of FMLA leave and her termination, which she did not, Defendant has offered a legitimate non-discriminatory reason for termination – her poor scorecard performance. From January 2015 until October 2016, Plaintiff had 13 months where she failed to meet her scorecard objectives. ECF No. 17-3. Adjusting for the four months when she was service leading, she only had five months where she met or exceeded her objectives. *Id.* Plaintiff was given multiple warnings with Michigan Bell's progressive discipline system. She received one first written warning in 2012, 2013, and 2014. ECF No. 17-8; 17-9; 17-10. She received two first written warnings in 2015. ECF No. 17-2 at PageID.142. Then she received three first written warnings in 2016, followed by two final written warnings. ECF No. 17-12; 17-13; 17-14. Plaintiff testified that neither her immediate supervisor (McComb) nor McComb's supervisor who approved Plaintiff's termination (Calhoun) were involved in approving or denying Plaintiff's FMLA leave. ECF No. 17-2 at PageID.131; ECF No. 17-23 at PageID.263; ECF No. 17-21 at PageID.236. Additionally, Plaintiff was permitted to take FMLA leave from 2010 through 2016. ECF No. 17-2 at PageID.125-129.

The fact that Plaintiff took FMLA leave and her non-corroborated testimony that managers told her that the company was attempting to get rid of people who took FMLA leave is insufficient to show that her poor scorecard performance metrics were a pretextual reason for her discriminatory termination. Defendant offered significant testimony regarding Plaintiff's continued inability to meet her scorecard requirements and her supervisor's efforts to assist Plaintiff. Defendant has shown there is no genuine issue of material fact regarding a FMLA retaliation claim by demonstrating that Plaintiff failed to prove a causal connection between Plaintiff's FMLA leave and her termination.

Plaintiff attempts to make a "cat's paw" theory argument that McComb, a non-decision-maker "with discriminatory animus," influenced Calhoun, the decision-maker. ECF No. 20 at PageID.349-350. "A plaintiff alleging liability under the cat's paw theory seeks 'to hold his employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision.'" *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 377 (6th Cir. 2017) (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 415 (2011)). However, even if McComb exhibited discriminatory animus, Plaintiff still has not shown there is a causal connection between her termination and her use of FMLA leave. Even if she had, Plaintiff cannot show the proffered reason for her termination, poor scorecard metrics, was pretextual. She has simply proven that she used FMLA leave and she was terminated.

**IV.**

Count II of Plaintiff's Complaint alleges that Defendant discriminated against her in violation of the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"). ECF No. 1 at PageID.10-11. "The purpose of the act is to mandate the employment of the handicapped to the fullest extent reasonably possible. *Peden v. City of Detroit*, 470 Mich. 195, 203–04 (Mich. 2004) (internal quotation and citation omitted). The plaintiff has the burden to prove a prima facie case of discrimination. *Id.*

To prove a prima facie case of discrimination under the PWDCRA, a plaintiff must show "(1) that he is disabled as defined in the act, (2) that the disability is unrelated to his ability to perform his job duties, and (3) that he has been discriminated against in one of the ways delineated in the statute." *Id.* If the plaintiff proves the prima facie elements, the defendant must then present a legitimate non-discriminatory reason for the termination. *Lytle v. Malady*, 458 Mich. 153, 173

(Mich. 1998). If the defendant can present such a reason, the burden shifts back to the plaintiff who must then prove that the proffered reason is pretextual. *Id.* at 174.

Under the act, a disability is defined as,

> (*i*) A determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:
> > (A) . . . substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion.
> > . . .
> (*ii*) A history of a determinable physical or mental characteristic described in subparagraph (*i*).
> (*iii*) Being regarded as having a determinable physical or mental characteristic described in subparagraph (*i*).
> MCL 37.1103(d).

"[T]he PWDCRA generally protects only against discrimination based on physical or mental disabilities that substantially limit a major life activity of the disabled individual, but that, with or without accommodation, do not prevent the disabled individual from performing the duties of a particular job." *Peden*, 470 Mich. at 204. "Major life activities have been defined to include 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.'" *Pauley v. Direct Contact, Inc.*, 2008 WL 2397641 at *5 (quoting *Chiles v. Machine Shop, Inc.*, 606 N.W.2d 398, 407 (Mich. App. 1999)). Specifically, "the plaintiff must proffer evidence from which a reasonable inference can be drawn that such activity is substantially or materially limiting." *Id.* (quoting *Lown v. JJ Eaton Place*, 598 N.W.2d 633, 638 (Mich. App. 1999)).

Alternatively, even if the plaintiff is not disabled, she could demonstrate that the employer discriminated against her based on a perceived disability. *Michalski v. Reuven Bar-Levav*, 625 N.W.2d 754, 760 (Mich. 2001). To prove a perceived disability, the plaintiff must show

> (1) the plaintiff was regarded as having a determinable physical or mental characteristic; (2) the perceived characteristic was regarded as substantially limiting one or more of the plaintiff's major life activities; and (3) the perceived characteristic was regarded as being unrelated either to the plaintiff's ability to perform the duties of a particular job or position or to the plaintiff's qualifications for employment or promotion.
>
> *Id.*

Defendant argues Plaintiff is not disabled because her temporary uses of FMLA are insufficient to rise to the level of actual or perceived disability. ECF No. 17 at PageID.101-102. Plaintiff identifies her use of FMLA leave for foot and back pain and concludes that that alone is sufficient evidence to show that she is either disabled or perceived to be disabled. She continues and explains that "these [her uses of FMLA] are, in effect, accommodations for a disability, and any retaliation against Plaintiff for utilizing an available accommodation would give rise to an inference of unlawful discrimination. For this reason, there is a question of fact with respect to Plaintiff's PWDCRA claim." ECF No. 20 at PageID.352. However, Plaintiff does not demonstrate how her foot and back pain substantially limit a major life activity or how Michigan Bell perceived her foot and back pain to substantially limit a major life activity.

Plaintiff testified that her foot pain only lasted a few hours and that her back pain, which lasted longer, never caused her to miss more than one day in a row at work. ECF No. 17-2 at PageID.128, 130. She also testified that she does not allege she is disabled. ECF No. 17-2 at PageID.131-132. And she provided no information about any major life activities that she is unable to complete at this time. Therefore, Plaintiff cannot recover under the PWDCRA due to an actual disability because she does not have an actual disability that affects a major life activity.

Plaintiff also cannot recover for a perceived disability. She provides no testimony that her supervisor, McComb, or the second line supervisor who decided to terminate her, Calhoun, perceived her to be disabled or as having a condition that significantly affected her life outside of

work. The closest Plaintiff comes is her testimony that managers explained the company was trying to eliminate employees who used FMLA and an unauthenticated email dating from 2009. However, Plaintiff has provided no case law establishing that the use of FMLA leave in and of itself is sufficient to prove the employer perceived the employee was disabled under the PWDCRA. Defendant has shown there is no genuine issue of material fact regarding Plaintiff's disability and accordingly, Defendant's motion for summary judgment as to Count II will be granted.

**V.**

Accordingly, **IT IS ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 17, is **GRANTED**.

It is further **ORDERED** that all remaining motions and objections, ECF Nos. 28 & 29, are **DENIED** as moot.

It is further **ORDERED** that the complaint, ECF No. 1, is **DISMISSED WITH PREJUDICE**.

Dated: April 2, 2020　　　　　　　　　　　　　　　　　　　　s/Thomas L. Ludington
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　THOMAS L. LUDINGTON
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge